VIRGINIA: IN THE CIRCUIT COURT OF AUGUSTA COUNTY

REGINA A. PALMER,

Plaintiff,

v.

OAKLAND FARMS, INCORPORATED, a Virginia corporation,
Serve: J. Garland Wright
Registered Agent
283 Oakland Farm Rd.
Weyers Cave, Virginia 24486

and

J. MICHAEL WRIGHT
68 Pond View Road
Weyers Cave, Virginia 24486

Civil Action No. __________

**COMPLAINT**

The Plaintiff, Regina A. Palmer, by counsel, complaining of the Defendants Oakland Farms, Incorporated and J. Michael Wright, alleges and says:

**THE PARTIES**

1. The Plaintiff, Regina A. Palmer ("Palmer"), is a citizen of the Commonwealth of Virginia and a resident of Harrisonburg, Virginia.

2. The Defendant Oakland Farms, Incorporated ("Oakland" or "Oakland Farms") is a Virginia corporation with its principal office and place of business in Augusta County, Virginia.

3. The Defendant J. Michael Wright ("Wright") is a citizen and resident of Weyers Cave, Augusta County, Virginia.

4. At all times relevant to the allegations contained in this complaint, the Defendant Wright was the vice president and a managing agent and employee of the defendant Oakland. As such, Wright had the authority to hire and fire employees, and contract for and bind Oakland Farms in personnel matters, including those concerning compensation and other terms and conditions of employment.

**FACTS COMMON TO ALL CLAIMS**

5. The Defendant Oakland is a closely-held corporation in which the defendant Wright has an ownership interest as a stockholder. Oakland is involved in the production and sale of milk, feed and in other agricultural ventures from its location in Augusta County, Virginia. The Defendant Oakland does business in, among other places, the area comprising the Western District of Virginia.

6. Wright had an independent personal stake in the termination of Palmer's employment described herein, and the termination of Palmer's employment was in furtherance of that independent personal stake.

7. Palmer is a white female 45 years of age. She began working full time for Oakland Farms in March 2007. Prior to that date, she had worked on a part time basis dating back to 2006. Palmer was employed by Oakland Farms as a milker along with her husband and a number of male Hispanics, some of whom were known to be illegal aliens. The milkers' duties were all comparable.

8. The male milkers' compensation included either housing on the farm or $650 per month in a housing allowance. As with the other male milkers, Palmer's husband received housing on the farm as part of his compensation.

9. Palmer was allowed to live in her husband's accommodations at no charge and in effect was receiving housing as well. However, she was not included on the company's group health plan along with some of the male employees.

10. The defendant Wright said that it would be too expensive to include Palmer on the health plan, and so he said Oakland Farms would pay Palmer $1.00 per hour in addition to the wage it otherwise was willing to pay her.

11. Wright and Oakland failed to honor their agreement with regard to Palmer's compensation.

12. Palmer and her husband experienced personal marital disputes unrelated to their work in 2008. On November 18, 2008, as a result of their personal disputes, Palmer and her husband separated and her husband moved out of the residence they had shared on the farm. The marital disputes did not affect Palmer's job performance, which remained good and at all times met the legitimate expectations of Oakland Farms.

13. Oakland Farms immediately provided Mr. Palmer with other housing on the farm as a part of his compensation from Oakland.

14. On November 24, 2008, the defendant Wright called Palmer and stated that he had to adjust her pay to compensate Oakland for her housing, since she and her husband were living separate and apart. Wright said that he was going to charge Palmer $700 per month rent for living in the residence on the farm. He then informed Palmer that he was going to begin deducting $160.00 per week from her weekly paycheck, effective with the next paycheck due to Palmer that week.

15. Palmer was extremely upset by this unilateral announcement of a change in her compensation, which meant that she would be earning compensation which was close to one-half of what the male milkers, including her husband, were receiving for performing in the same job, without even counting the differential in other benefits given to the men.

16. Palmer objected to the treatment and change in compensation. She told Wright that she felt he was treating her unfairly and that he was discriminating against her because she was a woman.

17. Consistent with Wright's expressed intention on behalf of Oakland to deduct or withhold money from Palmer's pay, Oakland issued a paycheck to Palmer which actually deducted or withheld well in excess of $160.00 from Palmer's pay for the previous week's work without Palmer's agreement and over her express objections.

18. Early on November 25, 2008, Palmer and her husband together spoke with Wright about the compensation issue. Palmer again stated that she was being treated differently and was being paid significantly less than the men. These complaints were to no avail.

19. After her shift that day, the defendant Wright called Palmer and asked her to meet him at the office. Palmer met with Wright and Charles Wright, Oakland's president. Palmer's husband was also at the meeting. Shortly after the meeting began, Palmer's husband became upset and left because the Wrights were speaking only of personal marital issues between the Palmers.

20. Palmer again asked why she was compensated differently and significantly less than the men. Charles Wright then acknowledged and admitted that the defendant Wright had been treating Palmer unfairly in relation to the men.

21. Charles Wright verbally agreed that Oakland Farms would alter Palmer's pay and compensation to make it consistent with the men and that Oakland would make no further deductions from her pay.

22. Palmer never agreed in writing or in any other manner to the deduction of any amount from her pay for a reason other than standard federal and state tax withholdings.

23. After receiving the paycheck from which pay had been deducted or withheld illegally, Palmer objected again to the Wrights to any deduction from her pay for housing, and further objected to the discriminatory treatment she was receiving and the dramatic differential in compensation between her and the male milkers, including her husband.

24. Oakland failed and refused to reimburse Palmer for all of the amounts illegally withheld from her paycheck issued in the week of November 25, 2008. Palmer demanded that Oakland provide her with a written statement of the gross amount of her pay, and the purpose and amount of any deductions and withholdings from her pay, to which information she is entitled under Virginia Code Ann. § 40.1-29, but Oakland, through Charles Wright, and in violation of Virginia law, refused to provide such a written statement.

25. Palmer and her husband continued to live in separate residences located on Oakland's property in Weyers Cave, Virginia. However, both Palmer and her husband continued to perform their jobs to the legitimate expectations of Oakland Farms.

26. Within days of Palmer's complaint of sexual discrimination, Oakland hired an Hispanic worker and, unbeknownst at the time to Palmer, trained that worker over the next three weeks to take Palmer's place as a milker.

27. On December 17, 2008, with no prior warning whatsoever, Palmer received a letter from the Defendant Wright along with her paycheck stating that her employment with Oakland was terminated. Wright also told Palmer that "[s]ince the house and electric is (sic) part of your salary you are to vacate the house within (5) days from the above date."

28. The Defendants Oakland Farms and Wright demanded that Palmer leave her home just days before Christmas. Palmer had no job and no money with which to obtain housing.

29. The Defendants Oakland and Wright took no adverse employment action against Palmer's husband, and in fact continued to include housing as part of his compensation package.

30. Oakland used the residence freed up by the summary and illegal eviction and termination of Palmer to provide housing for one of its Hispanic employees, instead of continuing to house that employee at an apartment owned by an unrelated third party.

31. Palmer at all times performed her job well and met the legitimate expectations of the defendant Oakland.

COUNT I – Wrongful Discharge in Violation of Virginia Public Policy
(Against Oakland Farms, Inc. and J. Michael Wright)

32. The allegations of Paragraphs 1 through 31 are repleaded herein as if set forth in full.

33. The articulated public policy of Virginia, set out at Virginia Code Ann. § 40.1-29, is that employees who are residents of the Commonwealth of Virginia have the right to receive compensation at regular intervals for their worked performed for an employer, and that employers may not withhold sums from such compensation without the written authorization of employees.

34. The law in Virginia is well-settled that Virginia Code Ann. § 40.1-29 and the public policy underlying such statute protects the property rights, personal freedoms, health, safety, or welfare of the people in general. Palmer is within the class of persons protected by the statute.

35. The public policy underlying Virginia statutes, including Virginia Code Ann. § 40.1-29, protects employees against termination of employment for requesting payment of earned compensation to which they are entitled without withholding to which they have not agreed in writing.

36. Shortly after terminating Palmer from her employment with Oakland Farms, Defendant Wright stated in relation to the termination of Palmer that Palmer "was not going to dictate what I'm going to pay her."

37. Defendants Oakland Farms and Wright wrongfully terminated Palmer's employment without any legal justification and in violation of Virginia public policies underlying Virginia Code § 40.1-29.

38. The actions of Oakland and Wright were intentional, malicious, willful, wanton, and reckless, entitling Palmer to an award of punitive damages against both.

39. As a direct and proximate result of Oakland's and Wright's wrongful, tortious conduct in violation of Virginia public policy conduct, Palmer has suffered, continues to suffer, and will in the future suffer injury and damages, embarrassment, emotional distress, lost wages and other income and benefits, together with pain, suffering, inconvenience, litigation expense, consequential damages and other injury.

COUNT II – Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*
(Against Oakland Farms, Incorporated)

40. The allegations of Paragraphs 1 through 39 are repleaded herein as if set forth in full.

41. On May 27, 2009, Palmer filed a timely charge of discrimination against the Defendant Oakland with the Equal Employment Opportunity Commission (EEOC) and, pursuant to a work sharing agreement, with the Virginia Council on Human Rights. Palmer's charge of discrimination included the discrimination complained of herein based on sex and retaliation.

42. Thereafter, on December 16, 2009, the EEOC issued and mailed Palmer a Notice of Right to Sue with respect to the charge of discrimination, advising Palmer that she had 90 days from the date of her receipt of the Notice within which to institute her suit. Plaintiff received the Notice of Right to Sue after December 18, 2009 and has instituted this action within 90 days of the date of the issuance and/or receipt of that Notice of Right to Sue.

43. All administrative conditions precedent to the filing of this lawsuit, to the extent necessary with regard to Palmer's sex and retaliation claims, have been performed or have occurred.

44. The defendant Oakland is engaged in an industry affecting commerce. The defendant Oakland has and/or had 15 or more employees for each working day in each of 20 or more calendar weeks in the calendar year pertinent to the allegations of discrimination herein, or in the preceding calendar year, and/or during the current or preceding calendar year within the meaning of 42 U.S.C. 2000e(b). Defendant meets the definition of "employer," and is therefore subject to suit, under Title VII.

45. Defendant Oakland has discriminated against Palmer on the basis of her sex, female, with respect to the terms and conditions of her employment in violation of Title VII, including, but not limited to unlawful and unequal compensation for the same or comparable work, and for the termination of her employment based on sex.

46. Defendant's conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of Palmer's civil rights.

47. By reason of the continuous nature of the Defendant Oakland Farms' discriminatory conduct pertaining to Palmer's compensation, Palmer is entitled to the application of the continuing violation doctrine to such claims.

48. As a result of Defendant Oakland's discrimination, Palmer has suffered emotional and economic harm.

49. As a direct and proximate result of Defendant Oakland Farms' conduct, and the retaliatory termination of Plaintiff Palmer's employment, Plaintiff Palmer has suffered, continues to suffer, and will in the future suffer great humiliation, severe mental anguish, emotional distress, injury and damages, damage to her reputation, loss of employment, loss of wages and benefits, loss of earning capacity, embarrassment, inconvenience, litigation expense including attorneys' fees, consequential damages including loss of career development opportunities, and other injury.

COUNT III – Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.; Proscription against Retaliation
(Against Oakland Farms, Incorporated)

50. The allegations of Paragraphs 1 through through 49 are repleaded herein as if set forth in full.

51. Defendant Oakland Farms engaged in a course of conduct designed to retaliate, and which did retaliate, against Plaintiff Palmer for her opposition to discrimination and/or participation in protected processes to challenge discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e-3(a).

52. Defendant Oakland Farms, through defendant Wright, has admitted that its reasons for termination of Plaintiff Palmer's employment included that Plaintiff Palmer had made threats to sue Oakland Farms for sex discrimination in relation to Oakland Farms' discriminatory treatment of Plaintiff Palmer based on sex.

53. Plaintiff Palmer opposed discriminatory conduct under the Act and participated in conduct which is protected from retaliation by Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e-3(a).

54. Defendant Oakland Farms treated Plaintiff Palmer negatively and selectively and denied her employment opportunities provided to other employees and terminated her from her employment as set forth herein in retaliation for her complaints of gender discrimination, including complaints of discriminatory compensation practices based on gender.

55. Plaintiff Palmer suffered materially adverse job consequences as a result of Defendant Oakland Farms' retaliatory actions.

56. As a direct and proximate result of Defendant Oakland Farms' conduct, and the retaliatory termination of Plaintiff Palmer's employment, Plaintiff Palmer has suffered, continues to suffer, and will in the future suffer great humiliation, severe mental anguish, emotional distress, injury and damages, damage to her reputation, loss of

employment, loss of wages and benefits, loss of earning capacity, embarrassment, inconvenience, litigation expense including attorneys' fees, consequential damages including loss of career development opportunities, and other injury.

WHEREFORE, the plaintiff, Regina A. Palmer, prays that the Court grant her judgment against the defendants Oakland Farms, Incorporated and J. Michael Wright, as set forth below, together with all costs expended in this behalf, including reasonable attorney's fees, and that the court:

1. Assume jurisdiction of this case;

2. Grant the plaintiff Regina A. Palmer judgment against the defendants for reinstatement of the plaintiff to her position at Oakland Farms, Incorporated, with all of the rights and privileges and duties of that position, including the restoration of her salary to the level it should be with all raises to which she would have been entitled, or in the alternative for the award of front pay if reinstatement is not feasible;

3. Grant judgment against the defendants jointly and severally for lost pay and benefits, and interest thereon through the date of trial, which would include any raises to which she would otherwise have been entitled, in the amount of $250,000;

4. Enjoin the defendants, or anyone acting on their behalf, from further discriminatory conduct against the plaintiff Regina A. Palmer;

5. Grant judgment against the defendants, jointly and severally, for the plaintiff's reasonable attorneys' fees and costs incurred herein;

6. Grant judgment against both defendants, jointly and severally, for compensatory damages under Count One in the amount of $350,000;

7. Grant judgment against both defendants, jointly and severally, for punitive damages under Count One in the amount of $350,000;

8. Grant judgment against the defendant Oakland under Counts Two and Three for compensatory damages in the amount of $50,000;

9. Grant judgment against the defendant Oakland under Counts Two and Three for punitive damages in the amount of $50,000;

10. Grant judgment against the defendants, jointly and severally, for prejudgment and postjudgment interest on all amounts awarded;

11. Grant judgment against the defendants, jointly and severally, awarding Plaintiff an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

12. Grant such other and further relief as to the Court seems just.

THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

REGINA A. PALMER

By Counsel

Timothy E. Cupp (VSB #23017)
Cupp & Cupp, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg VA 22803
(540) 432-9988
(540) 432-9557 [fax]
cupplaw@comcast.net
Counsel for Plaintiff Regina A. Palmer

VALIDATE CASE PAPERS
RCPT : 10000003948
DATE : 03/05/10 TIME: 10:19
CASE : 015CL10000245-00
ACCT : PALMER, REGINA A
AMT : $231.00

Certificate

I hereby certify that on March 4, 2010, I mailed a true copy of the foregoing Complaint to the defendants' attorney as follows: Jill Lowell, Esquire, Wharton, Aldhizer & Weaver, PLC, 100 South Mason Street, Harrisonburg, Virginia 22801.

Timothy E. Cupp

**COVER SHEET FOR FILING CIVIL ACTIONS**
COMMONWEALTH OF VIRGINIA

Case No. ........................................................
(CLERK'S OFFICE USE ONLY)*

Augusta County ........ Circuit Court

REGINA A. PALMER v./*In re:* OAKLAND FARMS, INCORPORATED
PLAINTIFF(S) DEFENDANT(S)

J. MICHAEL WRIGHT

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

[ ] Accounting
[ ] Administrative Appeal
[ ] Adoption
[ ] Adoption - Foreign
[ ] Adult Protection
[ ] Aid and Guidance
[ ] Annexation
[ ] Annulment
[ ] Appeal Decision of ABC Board
[ ] Appeal Decision of Board of Zoning
[ ] Appeal Decision of Comp Board
[ ] Appeal Decision of Employment Commission
[ ] Appeal Decision of Local Government
[ ] Appeal Decision of Marine Resources Commission
[ ] Appeal Decision of Voter Registration
[ ] Appointment of Church Trustee, Substitute Fiduciaries
[ ] Approval of Right to be Eligible to Vote
[ ] Asbestos Litigation
[ ] Attachment
[ ] Bond Forfeiture Appeal
[ ] Child Abuse and Neglect - Unfounded Complaint
[ ] Civil Contempt
[ ] Claim Impleading Third Party Defendant
[ ] Complaint - (Miscellaneous)
[ ] Compromise Settlement
[ ] Condemnation
[ ] Confessed Judgment
[ ] Conservator of Peace
[ ] Construe Will
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Correct/Erroneous State/Local Taxes
[ ] Counterclaim
[ ] Cross Claim
[ ] Custody/Visitation/Support/ Equitable Distribution
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Delinquent Taxes
[ ] Detinue
[ ] Divorce
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheat
[ ] Establish Boundaries
[ ] Expunge
[ ] Forfeiture of U.S. Currency
[ ] Freedom of Information
[ ] Garnishment
[ ] General Tort Liability (other than motor vehicle)
[ ] Grievance Procedures
[ ] Guardian/Conservator Appointment
[ ] Impress/Declare a Trust
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[x] Intentional Tort
[ ] Judgment Lien-Bill to Enforce
[ ] Judicial Review
[ ] Landlord/Tenant
[ ] Mechanics Lien
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Name Change
[ ] Order to Sever
[ ] Partition
[ ] Petition
[ ] Product Liability
[ ] Quiet Title
[ ] Referendum Elections
[ ] Reformation of Trust
[ ] Reinstatement of Driving Privileges
[ ] Reinstatement (General)
[ ] Removal
[ ] Separate Maintenance
[ ] Standby Guardian/ Conservator
[ ] Termination of Mineral Rights
[ ] Unlawful Detainer
[ ] Vehicle Confiscation
[ ] Will Contested
[ ] Writ of Certiorari
[ ] Writ of Habeas Corpus
[ ] Writ of Mandamus
[ ] Writ of Prohibition
[ ] Writ of Quo Warranto
[ ] Wrongful Death
[x] Other wrongful discharge and Title VII viol.

[x] Damages in the amount of $ 700,000.00+ ........ are claimed.

March 4, 2010
DATE

[ ] PLAINTIFF [ ] DEFENDANT [x] ATTORNEY FOR [x] PLAINTIFF [ ] DEFENDANT

[signature]
PRINT NAME

Timothy E. Cupp, Cupp & Cupp, PC, 1951-D Evelyn Byrd Ave., Harrisonburg, VA 22801 540-432-9988
ADDRESS /TELEPHONE NUMBER OF SIGNATOR

* See reverse side for Civil Action Type Codes - for Clerk's Office Use Only

CUPP & CUPP, P.C.
ATTORNEYS AT LAW
1951 EVELYN BYRD AVENUE, SUITE D
POST OFFICE BOX 589
HARRISONBURG, VIRGINIA 22803

TIMOTHY E. CUPP
JENIFER D. CUPP

TELEPHONE (540) 432-9988
FACSIMILE (540) 432-9557

March 4, 2010

By United Parcel Service

John B. Davis, Clerk
Augusta County Circuit Court
1 East Johnson Street
Staunton, Virginia 24401

Re: *Regina A. Palmer v. Oakland Farms, Incorporated and J. Michael Wright*

Dear Mr. Davis:

On behalf of my client, the plaintiff Regina A. Palmer, I am enclosing the following:

- Original and three copies of Regina A. Palmer's Complaint against the named defendants;
- Civil Cover Sheet
- Self-addressed and stamped envelope
- My firm check in the amount of $231.00 to cover filing and service fees

Please file the Complaint, issue process against both defendants and forward the summons and copies of the Complaint to the Sheriff for service on each defendant. Additionally, please file and date stamp the remaining copy and return it to me in the enclosed envelope.

Thank you for your assistance. Please contact me if you have any questions.

Very truly yours,

Timothy E. Cupp

Enclosures
Copy: Regina A. Palmer




OFFICIAL RECEIPT
AUGUSTA COUNTY CIRCUIT COURT
1 E. JOHNSON ST.
STAUNTON, VA 24401
540-245-5319

CIVIL

DATE: 03/05/10 TIME: 10:19:47 ACCOUNT: 015CL10000245-00 RECEIPT: 10000003948
CASHIER: GCC REG: AU16 FILING: ITOR TYPE: FULL PAYMENT
STYLE OF CASE: PALMER, REGINA A VS. OAKLAND FARMS, INC
SUIT AMOUNT: $700,000.00
ACCT OF: PALMER, REGINA A RECD: CUPP & CUPP
CHECK: $231.00 6884
DESCRIPTION 1: PLAINTIFF: PALMER, REGINA A
2: NO HEARING SCHEDULED

| CODE | DESCRIPTION | PAID | CODE | DESCRIPTION | PAID |
|---|---|---|---|---|---|
| 049 | WRIT TAX - CIVIL | 25.00 | 106 | TECHNOLOGY TRST FND | 5.00 |
| 123 | LEGAL AID FEE | 9.00 | 147 | INDIGENT ASSISTANCE | 1.00 |
| 170 | COURT TECH FUND | 10.00 | 206 | SHERIFF FEES | 24.00 |
| 219 | LAW LIBRARY | 2.00 | 229 | CHMF | 2.00 |
| 304 | CLERK CIVIL FEE | 150.00 | 228 | CHCF | 3.00 |

TENDERED : 231.00
AMOUNT PAID: 231.00
CHANGE AMT : .00

CLERK OF COURT: JOHN B. DAVIS

PAYOR'S COPY
RECEIPT COPY 1 OF 3